2002 WY 162

**Cody D. TERRY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 00–265.**

Supreme Court of Wyoming.

Oct. 28, 2002.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Cody D. Terry (Terry) was convicted by jury of aggravated assault on a pregnant female. We affirm.

## ISSUES

[¶ 2] Terry sets forth a single issue on appeal:

Whether the district court abused its discretion when it denied Appellant's Motion for New Trial Based Upon Newly Discovered Evidence.

Appellee State of Wyoming (State) raises two issues on appeal:

I. Should this appeal be dismissed for lack of a notice of appeal from the district court's Order Denying Appellant's Motion for a New Trial?

* Chief Justice at time of expedited conference.

II. Did the district court properly deny Appellant's Motion for a New Trial?

## FACTS

[¶ 3] Just prior to the trial commencing in this action on June 19, 2000, both Terry and the State issued subpoenas for a witness, Francis "Frankie" Miranda (Miranda), a minor, to appear and testify at the trial. The State's subpoena was returned without service, but Terry's subpoena was served upon Miranda. Nevertheless, Miranda failed to appear at trial to testify as required. Trial in this matter took place on June 19 through 21, 2000. On June 20, 2000, counsel for Terry twice requested a continuance of the trial based upon Miranda's failure to appear as a subpoenaed witness. The district court denied these motions but issued a bench warrant for Miranda's arrest. On June 21, 2000, the jury returned a guilty verdict against Terry for aggravated assault on a pregnant female pursuant to Wyo. Stat. Ann. § 6-2-502(a)(iv) (LexisNexis 2001).

[¶ 4] On June 21, 2000, Miranda was arrested on the issued bench warrant. Ultimately, upon hearing, Miranda was found guilty of contempt and sentenced. On June 28, 2000, Terry filed a *pro se* Motion For A New Trial. On July 17, 2000, Terry, through counsel, filed a Motion For New Trial Based Upon Newly Discovered Evidence and/or in the alternative Motion To Take Deposition Of Francis Miranda (Motion For New Trial). In the motion, Terry argued that if Miranda had testified at trial, her testimony would have been material, sufficient to provide evidence which may have changed the ultimate verdict rendered in this action, and not cumulative.

[¶ 5] On August 11, 2000, Terry was sentenced to serve a penitentiary sentence of 42 to 108 months with credit for 175 days of presentence incarceration. The Judgment and Sentence in this matter was entered on August 29, 2000. On September 8, 2000, Terry filed a pleading entitled Additional Briefing And Authority In Support Of Defendant's Motion For New Trial Based Upon Newly Discovered Evidence.

[¶ 6] On September 14, 2000, Terry filed his Notice of Appeal indicating that he was appealing from the Judgment and Sentence entered by the district court. On October 9, 2000, a hearing was held on the Motion for New Trial. However, the district court realized at the hearing that the case had been appealed to this court. The district court therefore concluded that it could take no action on the motion without remand from this court pursuant to W.R.Cr.P. 33(c). Thus, on November 28, 2000, we remanded this case to the district court for a 30–day period to allow the district court to consider and rule on the motion for new trial. This period of time was later extended by this court until January 12, 2001.

[¶ 7] On January 4, 2001, a hearing on the motion for new trial was held, and the district court denied the motion. Terry did not timely file any notice of appeal from this ruling or amend his prior filed notice of appeal to include such ruling.

### STANDARD OF REVIEW

[¶ 8] This court "has the inherent power, and the duty, to address jurisdictional defects on appeal." *CRB v. State, Dep't of Family Servs.*, 974 P.2d 931, 934 (Wyo.1999) (quoting *Robbins v. South Cheyenne Water & Sewage Dist.*, 792 P.2d 1380, 1384 (Wyo. 1990)). "The first and fundamental question on every appeal is that of jurisdiction; this question cannot be waived; it is open for consideration by the reviewing court whenever it is raised by any party, or it may be raised by the court of its own motion." *CRB*, at 934 (quoting *Gardner v. Walker*, 373 P.2d 598, 599 (Wyo.1962)).

[¶ 9] Further, the standard of review with respect to entitlement to a new trial upon newly discovered evidence is well established. The requirements that must be satisfied in order to gain a new trial on the basis of newly discovered evidence are (1) the evidence has come to the moving party's knowledge since the trial; (2) it was not owing to the want of due diligence by the moving party that this evidence did not become known sooner; (3) the evidence is so material that it would probably produce a different verdict, if the new trial were grant-ed; and (4) the evidence it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial. *Griswold v. State*, 2001 WY 14 ¶ 8, 17 P.3d 728, ¶ 8 (Wyo.2001); *Baumgartner v. State*, 7 P.3d 912, 915 (Wyo.2000); *Taul v. State*, 862 P.2d 649, 659 (Wyo.1993).

[¶ 10] A motion for a new trial on the ground of newly discovered evidence is not favored by the courts and is viewed with great caution. *Griswold*, at ¶ 8 (citing *Hopkinson v. State*, 679 P.2d 1008, 1012 (Wyo.), cert. denied, 469 U.S. 873, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984)). All four factors must be met for entitlement to a new trial; and, if any one factor is not satisfied, there is no error in the denial of the new trial motion. *Griswold*, at ¶ 8 (citing *Grable v. State*, 664 P.2d 531, 535 (Wyo.1983)). Hence, it is not essential that we address each and every factor if an appellant fails in his burden to satisfy even one of the four factors. *Griswold*, at ¶ 8. We have also set forth that the decision of the district court on a motion for new trial will be upheld absent an abuse of discretion:

It is clearly within the sound discretion of a trial court to either grant or deny a motion for a new trial based upon newly discovered evidence, and the ruling by the trial court will not be a basis for reversal of the conviction unless an abuse of discretion by the trial court is affirmatively shown. *Grable v. State*, 664 P.2d 531, 532 (Wyo.1983). It is the appellant's burden to demonstrate an abuse of discretion in the denial of his new trial motion. *Kavanaugh v. State*, 769 P.2d 908, 913 (Wyo.1989). We recently described the standard of an abuse of discretion as "reaching the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). In *Vaughn, id.* (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)), we confirmed the following definition:

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means [exercising] sound judgment ... with regard to what is right under the

circumstances and without doing so arbitrarily or capriciously."

*See also Shryack v. Carr Construction Company, Inc.,* 3 P.3d 850, 855 (Wyo.2000). In the absence of an abuse of discretion, we will not disturb the trial court's determination. *Taul v. State,* 862 P.2d 649, 659 (Wyo.1993).

*Griswold,* at ¶ 7.

## DISCUSSION

### Request for Dismissal Based Upon Lack of a Second Notice of Appeal

[¶ 11] The State asserts this appeal should be dismissed because Terry did not file a notice of appeal from the district court's order denying his motion for new trial. Relying on this lack of a second notice of appeal, as well as the fact that the sole issue raised in this appeal attacks the denial of the motion for new trial, the State contends this appeal is improper because Terry appealed from only the judgment and sentence entered by the district court. We disagree. Because this matter was remanded to the district court to facilitate resolution of Terry's motion for new trial and because this court retained jurisdiction over this appeal, we conclude Terry was not required to file a second notice of appeal to challenge the order denying the motion for new trial.

[¶ 12] While his appeal was pending, Terry filed a motion for new trial in the district court. Although the district court heard Terry's motion, it did not rule on the motion. Instead, it ordered that "any hearing on [Terry's] motion for a new trial is . . . continued until such time as the Wyoming Supreme Court may remand the case to this Court." Faced with this ruling, Terry then filed, in this court, a motion to stay briefing and a motion for limited remand to the district court. This court granted both the remand and the stay.

[¶ 13] We first note that, as it turns out, the motion for remand should not have been granted. In interpreting a virtually identical federal rule governing motions for new trial,[1] the Court of Appeals for the District of Columbia Circuit has written:

> Rule 33 of the Criminal Rules, 18 U.S.C.A., provides, as to motions for new trial based on the ground of newly discovered evidence: ". . . but if an appeal is pending the court may grant the motion only on remand of the case." The Advisory Committee explained in its notes that "Under the proposed rule a motion for a new trial could be made without securing a remand. If, however, the trial court decides to grant the motion then, prior to the entry of the order granting it, a remand will have to be obtained. This course will eliminate the need of a remand in those cases in which the trial court determines to deny a motion for a new trial." *In criminal cases, therefore, the procedure is that, when a new trial is sought because of newly discovered evidence in a case pending in the appellate court, a motion for the new trial is made in the District Court, and the District Court may then deny the motion or indicate that it will grant the motion. If that court indicates that it is inclined to grant the motion, a motion for remand is made in the appellate court.*[2]

*Smith v. Pollin,* 194 F.2d 349, 350 (D.C.Cir. 1952) (emphasis added, footnote omitted). As applied to this case, a remand was improper because the district court did not indicate it intended to grant the motion for new trial. The district court's order hints that it was concerned about ruling without having access to the record, which was in the possession of the Public Defender Appellate Counsel (the motion for new trial was made

---

1. The Wyoming rule governing motions for new trial, W.R.Cr.P. 33, provides in part:

   (c) *Newly Discovered Evidence.*—A motion for a new trial based on the grounds of newly discovered evidence may be made only before or within two years after final judgment but if an appeal is pending, the court may grant the motion only on remand of the case.

2. Because a motion for new trial based upon newly discovered evidence is not the subject of the appeal, the district court retains jurisdiction to hear the motion without remand. The granting of the motion only on remand is a matter of judicial efficiency and economy to avoid the continuation of the appeal. Any remand for a new trial which is granted will usually be followed by an order dismissing that appeal.

by Terry's trial counsel). However, under such circumstances, there are alternatives short of remand available. For example, a request for a stay of the appeal could have been made.[3]

■ Nevertheless, having granted the motion for remand, the question is whether Terry was required to file a second notice of appeal, *i.e.*, a notice of appeal challenging the order denying motion for new trial. This issue turns on the nature of the remand ordered by this court. *Bell v. U.S.*, 676 A.2d 37, 41 (D.C.1996).

■ [¶ 15] Here, this court's remand was for a specific purpose: to permit the district court to consider the motion for new trial. The case was not returned to the district court for all purposes. Instead, this court retained jurisdiction over the case. Under these circumstances, we conclude Terry was not required to file a second notice of appeal to challenge the order denying motion for new trial. *See Calene v. State*, 846 P.2d 679, 692 (Wyo.1993) (no second notice of appeal required following remand to develop claim of ineffective assistance of counsel). At the same time, this case points out the importance of these procedural matters and the importance of counsel maintaining vigilance with respect to these matters.

### *Motion For New Trial*

■ [¶ 16] Terry argues the district court committed an abuse of discretion when it denied his motion for new trial. Namely, Terry asserts that an adequate showing was made that Miranda's purported testimony met each of the four factors enunciated in *Griswold*, ¶ 8 as set forth above and, therefore, a new trial should have been provided. In opposition, the State contends Terry failed to establish that Miranda could not have been located earlier through due diligence,

that Miranda's alleged testimony would have proven to be material with respect to the ultimate outcome of the trial, and that Miranda's testimony would not have been simply cumulative. After hearing, the district court denied the motion for new trial finding that the proposed evidence was not so material that it would produce a different verdict and that such evidence was cumulative. Upon our review, we hold that the district court did not commit an abuse of discretion in denying Terry's Motion For New Trial.

[¶ 17] At trial, Terry's defense suggested that the injuries to April White, the involved victim, could have been the result of a scuffle between White and Miranda earlier that evening as opposed to an assault by Terry. Given this asserted defense, Terry contends that the alleged testimony of Miranda that White had been drinking on the night in question and that the day prior to trial White suggested to Miranda that "they had not gotten into a fight on the night in question" with White simultaneously directing an "O.K." sign with her hands toward Miranda is so material so as to produce a different verdict and that such evidence was not cumulative.[4]

[¶ 18] Beginning with Miranda's alleged testimony that White had been drinking on the evening in question, we frankly cannot see how this testimony may be characterized as anything other than cumulative. During trial, testimony was elicited from Sarah Stowe, Brenda Ehrler, and Terry, himself, that White was drinking that night although White denied doing so during her testimony. Further, Dr. Michael Bruno, the emergency room doctor who treated White for her injuries that evening, testified that he did not identify that White had been drinking earlier that night nor did any other medical person at that time make any notation that White may have been drinking earlier that evening.

---

3. Of course, depending on the circumstances, this court may not grant such a request. In addition, as explained below, had this court merely stayed (and not remanded) this matter, Terry would have been required to appeal from the order denying the motion for new trial. This, of course, would create two appeals. Under such circumstances, this court would endeavor to consolidate the two appeals, if feasible and appropriate.

4. It should be recognized that Miranda never gave any actual testimony or even submitted her own affidavit with respect to the Motion For New Trial. Rather, the sole affidavit submitted by Terry was that of Bernard Foster, an investigator, which detailed what Miranda told Foster on various occasions after having been arrested for failing to appear to testify at the trial as required.

In addition, Officer James Wetzel, the officer that interviewed White that evening, testified that White did not appear to be under the influence of alcohol. Clearly, therefore, the issue of whether White had or had not been drinking on the evening in question was substantially put before the jury.

[¶ 19] Moreover, Miranda's alleged testimony with respect to White's drinking that evening goes only to the veracity of White's testimony at trial. As recognized and admitted by Terry, this court has long established that a motion for new trial on the grounds of newly discovered evidence shall not be granted where the evidence is solely to impeach a witness. *Grable v. State*, 664 P.2d 531, 533–34 (Wyo.1983).

> The newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial.

*Id.*, at 533 (quoting *United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), cert. denied 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977)). *See also Baumgartner v. State*, 7 P.3d at 916; *Taul v. State*, 862 P.2d at 659; and *Keser v. State*, 737 P.2d 756, 760 (Wyo.1987).

[¶ 20] Next with respect to the alleged incident that occurred between White and Miranda wherein White suggested to Miranda that "they had not gotten into a fight on the night in question" with White simultaneously directing an "O.K." sign with her hands toward Miranda, Terry asserts that this testimony goes directly to his defense that the injuries to White could have been the result of an earlier scuffle between White and Miranda rather than an assault by Terry. Thus, Terry contends that this testimony must be considered material.

[¶ 21] The record in this case clearly evidences that White, Stowe, Ehrler, and Terry each testified about whether White and Miranda physically interacted with each other and the extent of such interaction. Specifically, White testified that she did not have a fight with Miranda that evening but that she tried to keep Miranda within her apartment

to keep Miranda from getting hurt given her state of intoxication. In contradiction to this testimony, Stowe, Ehrler, and Terry all testified White and Miranda had physical interaction with one another in varying degrees from embracing each other, to wrestling short of any actual striking with their fists, to a specific incident where Miranda placed her feet on White's chest and pushed away from White. Further, the testimony of Stowe showed Stowe did not recognize that White had been hurt by her struggles with Miranda, and the testimony of White indicates she was not physically hurt by Miranda and that any physical injuries to her body occurred as a result of the assault by Terry. Further, Terry stated that he did not recognize that White was physically injured before the assault occurred and that during this time period, White suddenly crouched in pain regarding her ankle although Terry did not know specifically why White reacted this way.

Again, the issue concerning any fracas that occurred between White and Miranda was put before the jury to consider. Therefore, we find that any alleged testimony by Miranda would have simply been cumulative. Further, as again even recognized by Terry, insofar as the alleged statements and actions of White toward Miranda the day prior to trial are concerned as they may solicit evidence of possible witness tampering, such evidence is again explicitly only related to the credibility of White's testimony. As indicated previously, such a basis, in and of itself, is not adequate to demand the granting of a new trial. *Grable*, 664 P.2d at 533; *Baumgartner*, 7 P.3d at 916; *Taul*, 862 P.2d at 659; and *Keser*, 737 P.2d at 760.

[¶ 23] Finally, in support of his argument Terry relies heavily upon the decision rendered in the case of Beintema v. Everett, United States District Court for the District of Wyoming, Case No. 99–CV–35–J, 2001 WL 630512 (D.Wyo. April 23, 2001) (unpublished), and strenuously argues that this decision demands that Terry be afforded a new trial. Particularly, Terry asserts that because the subject trial was dependent almost entirely upon the testimony of a single witness, White, and without such testimony the

charge levied against Terry would not lie, any impeachment evidence such as that allegedly would be elicited from the testimony of Miranda must be considered to be very material and very relevant so as to require a new trial. However, the facts in *Beintema v. Everett* are distinguishable from those facts that exist in this case.

[¶ 24] In *Beintema v. Everett*, that court ruled that a state prosecutor violated Beintema's right to a fair trial under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by withholding relevant, material, exculpatory, and impeachment evidence which inhibited full cross-examination of the state's single key prosecution witness. The evidence that was withheld involved threats from a police detective to prosecute other members of the family of the prosecution's star witness if he did not cooperate in testifying in the prosecution of Beintema. In this case, no withholding of exculpatory evidence in violation of the tenets set forth in *Brady v. Maryland* are involved. In addition, the bulk of the purported evidence that allegedly would be presented by Miranda's

testimony is not material to the charged offense but only regards collateral issues already addressed through many other witnesses.[5]

[¶ 25] Accordingly, we hold that Terry has not met his burden of demonstrating an abuse of discretion by the district court when it denied his motion for new trial. Under our established precedent, in the absence of a showing of an abuse of discretion by the district court, we will not disturb its determination in this case.

## CONCLUSION

[¶ 26] For the foregoing reasons, the conviction of appellant for aggravated assault on a pregnant woman is affirmed.

---

5. It is also of interest to note that the credibility of Miranda's testimony could also be highly placed in question as many witnesses testified that Miranda was extremely intoxicated during the date in question and was later found by the police that evening lying in some bushes without her shoes or a coat on although it was a snowy, very cold night. In addition, Miranda was completely incoherent and was unable to identify who she was, where she was, or give any other helpful information to the police officers that found her. Given her condition, Miranda was transported to the emergency room for medical care.